[Civ. No. 56429. Second Dist., Div. Twc. June 19, 1980.]

MANNY ROSE, Plaintiff and Appellant, v.
MEDTRONICS, INC., Defendant and Respondent.

152

**COUNSEL**

Lawrence A. Chusid, Robert S. Canter and Alan M. Salkow for Plaintiff and Appellant.

Haight, Dickson, Brown & Bonesteel, Robert L. Dickson, Roy G. Weatherup, Carl J. Klunder and Jerry M. Custis for Defendant and Respondent.

OPINION

**FLEMING, Acting P. J.**—Plaintiff Manny Rose appeals the dismissal of class-action allegations in his suit for damages for personal injuries allegedly caused by the defective manufacture of a cardiac pacemaker.

Rose's first amended complaint makes the following allegations: In 1975 his physician surgically implanted in Rose a cardiac pacemaker manufactured by defendant Medtronics, Inc. In October 1977 Medtronics notified physicians throughout the country that certain of its pacemakers, whose specific models and serial numbers were enumerated, contained a potential defect in one of its components. In turn, Rose's physician notified him that his pacemaker was one of the potentially defective models and should be replaced. In November 1977 Rose had his pacemaker surgically replaced.

In April 1978 Rose instituted the action at bench on behalf of himself and a class of approximately 4,000 others for injuries caused and damages suffered as a result of Medtronics' "medical negligence." The class was allegedly composed of those individuals who were "required to undergo a second operation for the implantation of a cardiac pacemaker, due to the fact that a previously inserted cardiac pacemaker manufactured by defendant Medtronic[s], Inc., was announced to be defective. The class would include those persons who had implanted into them a pacemaker manufactured by [Medtronics] bearing a model and serial number in the group enumerated [in Rose's] complaint." The first amended complaint pleaded causes of action based on negligent conduct, on product liability, on strict liability, and on breach of express and implied warranties, and alleged that the class members sustained bodily injuries, suffering, worry, and anxiety, and that Rose himself sustained damages in excess of $5,000.

Medtronics demurred to the first amended complaint on the ground, inter alia, that Rose failed to plead facts sufficient to constitute a valid class action. In sustaining the demurrer to the class action without leave to amend, the trial court concluded that "a class action is an inappropriate vehicle to use for the adjudication of the highly individual experiences and perhaps injury suffered by the many persons who[m Rose] seeks to represent, [citation]." The court reasoned that "even though the mechanical failure of the device is susceptible to proof applicable perhaps to all users of the device, the results therefrom are so

susceptible to individual proof that the individual issues would predominate over the common issues." In October 1978 the court ordered the action dismissed as to "the unnamed members of the purported class only, but [allowed it to] remain pending insofar as the complaint asserts claims on behalf of the individually named plaintiff."

On appeal, Rose contends the trial court erred, procedurally, in making its determination at the pleading stage, thereby denying him an opportunity to establish the propriety of the class action at an evidentiary hearing (See *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 820-821 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513]; Civ. Code, § 1781, subd. (c)); and erred, substantively, in concluding that his pleading did not assert a valid class action.

■ Procedurally, where there is a "reasonable possibility" that the plaintiff in a class action can establish a community of interest among potential claimants, the preferred course is to defer decision on the propriety of the class action until an evidentiary hearing has been held on the appropriateness of class litigation. (*Beckstead v. Superior Court* (1971) 21 Cal.App.3d 780, 783 [98 Cal.Rptr. 779]; see also, *Vasquez v. Superior Court, supra*, pp. 820-821; *La Sala v. American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 876 [97 Cal.Rptr. 849, 489 P.2d 1113].) But when the complaint on its face fails to contain sufficient allegations of fact to establish a class interest, the class issue may be properly disposed of by demurrer. (*Bartlett v. Hawaiian Village, Inc.* (1978) 87 Cal.App.3d 435, 437-438 [151 Cal.Rptr. 392]; see also, *Diamond v. General Motors Corp.* (1971) 20 Cal.App.3d 374, 381 [97 Cal.Rptr. 639, 47 A.L.R.3d 759]; *Bozaich v. State of California* (1973) 32 Cal. App.3d 688 [108 Cal.Rptr. 392], order striking class allegations from complaint.) We therefore consider the substance of the first amended complaint.

■ A class action is maintainable only when there exists a community of interest in common questions of law and fact among the claimants to be represented, and it is likely that the combination of claims in a single action will substantially benefit both the claimants and the courts. (Civ. Code, § 1781; Code Civ. Proc., § 382; *Vasquez v. Superior Court, supra*, 4 Cal.3d 800, 809-810; *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 704 [63 Cal.Rptr. 724, 433 P.2d 732].) If each member of the class will be required to litigate numerous and substantial issues affecting his individual right to recover damages after the common questions have been determined, the requirement of communi-

ty of interest is not satisfied. (*City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 459-460 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223]; *Weaver* v. *Pasadena Tournament of Roses* (1948) 32 Cal.2d 833, 838-840 [198 P.2d 514]; *Altman* v. *Manhattan Savings Bank* (1978) 83 Cal.App.3d 761, 768 [148 Cal.Rptr. 100]; *Stilson* v. *Reader's Digest Assn., Inc.* (1972) 28 Cal.App.3d 270, 273-274 [104 Cal.Rptr. 581].)

A dispute over the propriety of a class action requires the court to evaluate the factors necessarily involved in the particular action. ■ In general, mass tort actions for personal injuries are not appropriate for class-action treatment (Fed. Rules Civ. Proc., rule 23, Supplemental Notes of Advisory Com., reported in 28 U.S.C.A., rule 23, p. 299), in that the major elements in tort actions for personal injuries—liability, causation, and damages—may vary widely from claim to claim. Reluctance to extend class-action treatment to mass torts governs even those types of claims which necessarily contain common questions of law and fact. This is most clearly seen in airplane accident causes, where, although the injuries indubitably possess a common origin, courts decline to adjudicate such causes as class actions. (*McDonnell Douglas Corp.* v. *U.S. Dist. Ct., C.D. of Cal.* (9th Cir. 1975) 523 F.2d 1083; *Marchesi* v. *Eastern Airlines, Inc.* (E.D.N.Y. 1975) 68 F.R.D. 500; *Causey* v. *Pan American World Airways, Inc.* (E.D.Va. 1975) 66 F.R.D. 392; *Hobbs* v. *Northeast Airlines, Inc.* (E.D.Pa. 1970) 50 F.R.D. 76.) Rather, consolidation of actions is the preferred procedure for disposition of such causes. The reasons behind the reluctance to process mass torts as class actions are twofold: first, the great importance of tort claims for personal injuries to the claimants themselves and the consequent desire of claimants to be represented by counsel of their own choosing rather than by strangers, and, second, the wide disparity in damages that ordinarily arises from such claims. And once we leave those types of mass torts which necessarily involve common causation, the issues become further diversified by individual causation. For example, in claims for personal injuries arising from exposure to asbestos fibers, the period of exposure of individual claimants will vary, the type and amount of work done during exposure will vary, and the intensity of exposure will vary. Some claimants may have difficulty establishing any injury caused by the exposure, others may establish partial injury, still others may establish full injury. (*Yandle* v. *PPG Industries, Inc.* (E.D.Tex. 1974) 65 F.R.D. 566.) In such causes not only the issue of damages but the issue of liability may differ for each claimant. As the court said in *Yandle, supra*: "This case

is very different from the single mass accident cases that have in the past allowed a class action to proceed on the liability issues. Those cases have normally involved a single tragic happening which caused physical harm or property damage to a group of people, and affirmative defenses are absent. Usually, one set of operative facts will establish liability. Here we have two lawsuits covering a ten year span of time in which the nine defendants acted differently at different times. The Court is in agreement with the defendant that there is not a single act of negligence or proximate cause which would apply to each potential class member and each defendant in this case." (P. 571.)

To the same effect is *Rosenfeld v. A. H. Robins Co., Inc.* (1978) 63 App.Div.2d 11 [407 N.Y.S.2d 196], a product liability claim for personal injuries against the manufacturer of a defectively designed intrauterine device. The court refused to certify an action for personal injuries as a class action because common causation of personal injuries could not be determined on a class basis.

At bench, the pleadings and documents in the record show that defendant, a manufacturer in Minneapolis, Minnesota, of cardiac pacemaker devices for surgical implantation in the human body, discovered a potential defect in one of the components of six models of its pacemakers and notified physicians throughout the country that, depending on the particular patient, it might be advisable to replace those particular pacemakers ahead of schedule. It appears that pacemakers are periodically replaced under the direction of the user's physician, and it also appears that the dependence of a user on his pacemaker varies from minimal to total. According to plaintiff's allegations, replacement involves a surgical procedure, for which he claims reimbursement of medical and related expenses plus general damages in excess of $5,000. Again according to plaintiff's allegations, 4,000 other persons are potentially similarly situated, and he seeks to sustain a class action on their behalf.

The facts set out in this cause suggest few of the elements that generally justify maintenance of a class action on behalf of a large group of claimants—a multiplicity of small claims, a single happening which causes identical injury to a large group of persons, common elements of proximate cause, common elements of injury, and common elements of damage. To the contrary, in the factual situation posed at bench, defendant's liability could vary from claim to claim, claimants' damages could vary from the nonexistent to damages for wrongful

death, and the activities and skills of intermediaries (in this instance the prescribing physicians and installing surgeons) could have different degrees of relevancy for each claim. Like any manufacturer of a potentially defective product, the defendant may face claimants with varying periods of use of the product, varying needs for its replacement, varying elements of causation, varying degrees of injury, and varying amounts of damages.

Nor do the pleadings suggest any preponderance of common questions of law among potential causes of action. For example, plaintiff has pleaded a cause of action for product liability and a cause of action for strict liability on behalf of all users of defendant's pacemakers throughout the country. It is notorious that the law applicable to such torts varies widely from state to state. Plaintiff has also pleaded a cause of action for breach of express warranty on behalf of all users of defendant's pacemakers. But since the pacemakers went from manufacturer to users by way of intermediaries (the prescribing physicians and installing surgeons), in all likelihood the issue of express warranty would vary from user to user. Finally, such legal questions as period of limitation, measure of damages, assumption of risk, informed consent, and contributory or comparative negligence, most certainly would vary from state to state, and would require the court to make diverse legal rulings on existing tort law in a multitude of jurisdictions. Patently, questions of law would be more individual than common.

We conclude that the present action is singularly ill-suited for prosecution as a class action, in that the factual questions and legal issues raised in the pleadings on behalf of 4,000 potential claimants are preponderantly diverse rather than common. Plaintiff's individual action provides him a sufficient vehicle to remedy any wrong he may have suffered as a result of defendant's conduct. (*City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 460-462 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223].)

The order of dismissal is affirmed.

Compton, J., and Beach, J., concurred.